UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Elsee Bradley III,<br><br>    Plaintiff,<br><br>v.<br><br>Compass Airlines, LLC, Compass Airlines, Inc., and Trans States Holdings, Inc., collectively d/b/a/ Compass Airlines,<br><br>    Defendant. | Case No. 12-cv-2471 (SRN/JSM)<br><br>**MEMORANDUM OPINION AND ORDER** |

Ian S. Laurie, Gerald T. Laurie, and Leanne R. Fuith, Laurie & Laurie, P.A., 1660 South Highway 100, 508 E. Parkdale Plaza, St. Louis Park, MN 55416, for Plaintiff.

Hal A. Shillingstad and Jaime N. Cole, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 90 South Seventh Street, Suite 3800, Minneapolis, MN 55402; David J.A. Hayes III, Compass Airlines LLC, 11495 Navaid Road, St. Louis, MO 63044, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I. INTRODUCTION

This matter came before the Court on Defendants Compass Airlines, LLC, Compass Airlines, Inc., and Trans States Holdings, Inc.'s Motion to Dismiss. [Doc. No. 12]. For the reasons that follow, the Court denies Defendants' motion.

## II. BACKGROUND

Defendant Compass Airlines, LLC ("Compass") is a Delaware limited liability company with its principal place of business in Minnesota. (Def.'s Notice of Removal ¶ 5 [Doc. No. 1].) Compass is an air carrier as defined by the Railway Labor Act, 45

1

U.S.C. § 151, *et seq.* (Mem. in Supp. of Def.'s Mot. to Dismiss at 2 [Doc. No. 14].) Defendant Trans States Holdings, Inc. is the sole member and parent company of Compass. (Id.) Compass and Trans States Holdings, Inc. have their own separate and distinct employees. (Id.) Defendant Compass Airlines, Inc. was converted to Compass Airlines, LLC in 2010, and as such, no longer exists. (Def.'s Notice of Removal ¶ 5 [Doc. No. 1].)

Plaintiff Elsee Bradley III, a citizen of Texas, was employed by Compass as a pilot from February 21, 2008 to February 9, 2011. (Decl. of Captain James M. White ¶ 3 [Doc. No. 15].) Bradley was a member of the Air Line Pilots Association ("ALPA"), the certified bargaining representative for Compass's pilots under the Railway Labor Act. (Mem. in Supp. of Def.'s Mot. to Dismiss at 3 [Doc. No. 14].)

Effective July 26, 2007 through the present, a collective bargaining agreement ("CBA") between Compass and ALPA has governed the terms and conditions of pilot employment, including discipline and discharge, grievances, and arbitration. (Id. ¶ 6.) Section 19 of the collective bargaining agreement addresses procedures for investigation, discipline, and disciplinary grievances. (Second Decl. of Captain James M. White, Ex. 1 at 19-1 [Doc. No. 22-1].) Remedies under Section 19 are lost wages and benefits; reinstatement without loss of seniority, longevity, benefit, or any adjustment to any benefit accrual dates; and clearing of charges from the exonerated pilot's record. (Id. at 19-6.) Grievances that are not resolved earlier in the process may be appealed to the System Board of Adjustment, which consists of a neutral arbitrator, a company member, and an ALPA member. (Id. at 19-4, 21-1.) Section 20 covers grievances related to

2

matters other than discipline. (Id. at 20-1.) Section 21A provides a broad arbitration agreement:

> In compliance with Section 204, Title II, of the Railway Labor Act, as amended, the parties establish a System Board of Adjustment for the purpose of adjusting and deciding disputes or grievances arising under the terms of this Agreement or any supplemental agreement. Such Board will be known as the Compass Airlines Pilots' System Board of Adjustment (hereinafter referred to as the "System Board").

(Id. at 21-1.) Finally, Section 26DD contains a non-discrimination clause:

> The Company and the Association agree that they will comply with applicable State and Federal laws which prohibit discrimination against any employee because of race, creed, color, religion, national origin, sex, age, disability or status as a military veteran.

(Id. at 26-15.)

During his employment with Compass, Bradley was assigned to fly airplanes, as opposed to other pilots with supervisory or administrative functions. (Compl. ¶ 4 [Doc. No. 1-1].) Initially hired as a First Officer, Bradley was promoted to Captain in October 2008. (Id. ¶ 3.) Bradley maintains that he had an "excellent record of performance and safety as a Captain," and he was "responsible for flying the 76-seat Embraer 175 airplane on many different routes and destinations without incident." (Id. ¶ 5.)

Bradley contends that Compass has a "poor record of hiring minority pilots" and a "practice of holding minority pilots to different standards than their Caucasian counterparts." (Id. ¶¶ 6-7.) Bradley alleges that in late 2010, he was required to participate in Compass's recurrent ground training program and to receive a passing grade from program evaluators. (Id. ¶ 8.) During training on the flight simulator, Bradley's evaluator allegedly became upset with him and loudly referred to Bradley as

3

"*you* fuckin' people" twice, presumably referring to his race. (Id.) Bradley and his first officer allegedly objected to the offensive statements. (Id.) When Bradley asked the evaluator to explain his comments, the evaluator became increasingly agitated and hostile. (Id.) Upset by the evaluator's conduct, Bradley allegedly could not finish the simulation and received a "not satisfactory" grade. (Id.) After the simulation, Bradley complained about the racial harassment to the evaluator's supervisor, Bill Whyte, who told Bradley to "get out of his office." (Id. ¶ 9.) Bradley was not allowed to complete or retake his simulator training. (Id.) In addition, Bradley allegedly complained to his supervisor, who did not respond. (Id.) Bradley contends that as a result, he wrote a letter to human resources indicating that he was a victim of race discrimination. (Id.)

Bradley submits that since his discrimination complaint to Mr. Whyte, Compass retaliated against Bradley by requiring him to undergo non-standard training and holding him to a much higher standard than his Caucasian counterparts. (Id. ¶ 10.) Moreover, Bradley alleges that Compass failed Bradley in his training, demoted him from a Captain to a First Officer, dramatically reduced Bradley's work hours, subjected Bradley to a four- to five-hour oral exam that Bradley believes no Caucasian employee had to undergo, and overly scrutinized Bradley's performance. (Id. ¶¶ 11, 13.)

Bradley further maintains that during this period of harassment and retaliation, he provided a written complaint through his union, noting that "Bill Whyte the manager of training has some racially personal dispute with me that I am not aware of," and that he "should not have to go to work and worry about if I will be racially discriminated against today!" (Id. ¶ 12.)

On February 9, 2011, Compass terminated Bradley on alleged grounds of insubordination and falsification of records: for failure to follow instructions of Bradley's Chief Pilot and failure to disclose prior employment with another airline in Bradley's pre-employment screening, respectively. (Decl. of Todd Naugle ¶ 5 and Ex. 1 at 3-4 [Doc. No. 16-1].)

On March 2, 2011, ALPA and Bradley filed a grievance over Bradley's termination, requesting an investigation and hearing. (Decl. of Todd Naugle, Ex. 1 at 2.) Bradley's grievance reads in part:

> Pursuant to the Agreement between Compass Airlines, LLC and the air line pilots in its service, as represented by the Air Line Pilots Association, International, the undersigned [Bradley], in accordance with the provisions established in Section 19 and related Sections of the Agreement, hereby requests an Investigation and Hearing based upon the issuance of a letter of termination dated February 9, 2011. The Company violated Section 19 A.2 in that it lacks just cause to discharge the grievant. In addition, the Company violated Sections 19 A. and 19 B. and related Sections of the Agreement by failing to conduct an investigatory hearing and failing to deliver written notification of the discharge to the grievant in accordance with Section 19 A.3.d. Instead, the Company discharged the grievant without notice while he was on sick leave.

(Id.) After failing to resolve the grievance at earlier stages, ALPA requested submission of the matter to the System Board. (Decl. of Todd Naugle ¶ 7.)

On April 11, 2011, Bradley filed an EEOC Charge of Discrimination based on race and retaliation with the Minnesota Department of Human Rights and Minneapolis Department of Civil Rights. (Decl. of Jaime N. Cole ¶ 4 and Ex. A [Doc. Nos. 21, 21-1].) This charge states:

> I was employed as a Pilot, until I was discharged from my job on February 9, 2011. While I was employed, I was singled out for no reason. I was the

only one treated this way. Some time ago, a white, male Flight Standards . . . told me in a hostile voice, "you f***ng people." I told him that I felt intimidated by him and I refused to work with his hostile behavior. I reported this to HR and to my Supervisor Mr. Eric Morris who did nothing to resolve the matter. I was then instructed to do some training all over again and other things that I had done before. This was ongoing. Finally, there was an open investigation on me and I was told to meet with management on 1/26/2011. Because I was ill, I was not able to make the meeting.

On February 9, 2011, I was discharged from my job. There was no valid reason for my discharge.

I believe that I was discriminated against, because of my race (black) and retaliated against for making a complaint of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Id. at Ex. A.)

On September 6, 2012, Bradley served a Summons and Complaint on Defendants. (Joint Stipulation Setting Time to Answer and/or Otherwise Respond to Pl.'s Compl. ¶ 1 [Doc. No. 9]; Compl. [Doc. No. 1-1].) On September 10, 2012, Bradley filed the Complaint in Minnesota state court, First Judicial District, Dakota County. (Joint Stipulation Setting Time to Answer and/or Otherwise Respond to Pl.'s Compl. ¶ 2 [Doc. No. 9].) The Complaint alleged race discrimination in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.08, and reprisal in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.15. (Compl. ¶¶ 15-22 [Doc. No. 1-1].) The Complaint did not refer to any provisions of the collective bargaining agreement.

On September 18, 2012, the System Board convened to arbitrate Bradley's matter, during which Compass presented its witnesses and evidence to support its decision to terminate Bradley. (Mem. in Supp. of Def.'s Mot. to Dismiss at 4 [Doc. No. 14].)

6

Defendants introduced testimony that Bradley never made any complaints of discrimination to the company via the procedures set forth in its anti-discrimination and harassment policy. (Decl. of Todd Naugle at ¶ 8 [Doc. No. 16].) At the request of ALPA, the matter was recessed to a later date for Bradley to develop a rebuttal case. (Mem. in Supp. of Def.'s Mot. to Dismiss at 4 [Doc. No. 14].) The arbitration was scheduled to continue on November 1 and 2, 2012, but at ALPA's request and over Compass's objections, the matter was continued until January 14, 2013. (Id.)

On September 26, 2012, Defendants removed Plaintiff's state court case to federal court in the District of Minnesota, on grounds of diversity of citizenship and federal question under the Railway Labor Act. (Def.'s Notice of Removal ¶¶ 1, 4-6 [Doc. No. 1].)

On October 31, 2012, Defendants filed the instant motion to dismiss for lack of subject matter jurisdiction. [Doc. No. 12]. On January 17, 2013, this Court heard oral argument and requested supplemental briefing on whether Plaintiff had waived his rights to a judicial forum by engaging in arbitration proceedings before the instant litigation. (Mot. to Dismiss Hr'g Tr. at 12-13.) On January 28, 2013 and February 4, 2013, Defendants and Plaintiff respectively submitted their positions on the waiver of judicial forum issue. [Doc. Nos. 26, 27].

## III. DISCUSSION

### A. Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of subject matter jurisdiction. When considering a

Rule 12(b)(1) motion, a district court may consider matters outside the pleadings. Land v. Dollar, 330 U.S. 731, 735 & n.4 (1947); Satz v. ITT Fin. Corp., 619 F.2d 738, 742 (8th Cir. 1980). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Osborn v. United States, 918 F.2d 724, 730 (8th Cir.1990).

### B. Subject Matter Jurisdiction

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's complaint because: (1) the collective bargaining agreement governing Bradley's employment requires that Bradley arbitrate his discrimination and reprisal claims, and (2) Bradley's claims require interpretation of the collective bargaining agreement and thus are preempted by the Railway Labor Act. (Mem. in Supp. of Def.'s Mot. to Dismiss at 5-12 [Doc. No. 14].) The Court disagrees with Defendants on both points.

#### 1. The collective bargaining agreement does not require Bradley to arbitrate his statutory claims of race discrimination and reprisal

Defendants argue that Bradley must submit his discrimination and reprisal claims in this case to arbitration, because they fall within the purview of the collective bargaining agreement. (Id. at 6-9.) In support of this argument, Defendants cite the broad arbitration language in Section 21A of the collective bargaining agreement, which establishes a System Board of Adjustment "for the purpose of adjusting and deciding disputes or grievances arising under the terms of this Agreement or any supplemental

8

agreement." (Id. at 6.) Defendants also cite the non-discrimination clause of Section 26DD, whose terms state that "[t]he Company and the Association agree that they will comply with applicable State and Federal laws which prohibit discrimination against any employee because of race, creed, color, religion, national origin, sex, age, disability or status as a military veteran." (Id.) Urging the Court to read these provisions together, Defendants liken the language of Section 21A and Section 26DD to Section 30 of the collective bargaining agreement in 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009), a case in which the Supreme Court compelled arbitration of the plaintiff's employment discrimination claims under the terms of the collective bargaining agreement. (Id. at 7.)

14 Penn Plaza, however, is distinguishable from the case at hand. 14 Penn Plaza compelled arbitration because the collective bargaining agreement "clearly and unmistakably" required union members to arbitrate claims under the Age Discrimination in Employment Act. 556 U.S. at 274. Section 30 of this collective bargaining agreement reads in part:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any other characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, . . . or any other similar laws, rules, or regulations. All such claims shall be subject to the grievance and arbitration procedures (Articles V and VI) as the sole and exclusive remedy for violations.

(Id. at 252.) Notably, Section 30 addresses claims arising under non-discrimination statutes with mandatory grievance and arbitration procedures in the same paragraph. (Id.) Also, Section 30 specifically subjects claims under the Age Discrimination in

9

Employment Act to grievance and arbitration procedures, and it designates these procedures as the "sole and exclusive remedy." (Id.) By contrast, Defendants advocate a reading that combines the disparate provisions of Section 21A and Section 26DD. Moreover, Section 26DD does not specify any federal or state laws, and Section 21A does not limit Bradley's relief for statutory claims to arbitration. Thus, the Court finds that the collective bargaining agreement does not "clearly and unmistakably" require Bradley to submit his claims under the Minnesota Human Rights Act to arbitration.

### 2. Bradley's statutory claims are not preempted

Next, the Court considers whether Bradley's claims are preempted by the Railway Labor Act. The Railway Labor Act requires air carriers and unions to establish a system board of adjustment to resolve all disputes growing out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions. Jenisio v. Ozark Airlines, Inc., 187 F.3d 970, 972-73 (8th Cir. 1999). These disputes, commonly referred to as "minor disputes," must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 253 (1994). States, however, can provide workers with substantive rights independent of the collective bargaining agreement, and causes of action to enforce such rights are not preempted by the Railway Labor Act. (Id. at 256-57.) Thus, the critical question is one of characterization: whether the state law claim involves interpretation or application of the collective bargaining agreement—or stated another way, whether the

state law claim is independent of the collective bargaining agreement. Taggart v. Trans World Airlines, 40 F.3d 269, 272 (8th Cir. 1994).

Defendants argue that Bradley's claims require an interpretation of the collective bargaining agreement for resolution, because Bradley's allegations relate to provisions concerning discrimination (Section 26DD), seniority (Section 22), scheduling (Section 25), and discipline and discharge (Section 19). (See Mem. in Supp. of Def.'s Mot. to Dismiss at 9-12 [Doc. No. 14]); Def.'s Reply in Supp. of Their Mot. to Dismiss at 14-15 [Doc. No. 20].) In opposition, Plaintiff argues that his claims do not require interpretation of the collective bargaining agreement, because the collective bargaining agreement is not the source of rights that he seeks to enforce, and any allegations in the Complaint regarding training or other components of his work are, at most, mere references to the collective bargaining agreement. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 10-11 [Doc. No. 19].)

The Court finds that Bradley's discrimination and reprisal claims in this case are independent of the collective bargaining agreement and thus, not preempted by the Railway Labor Act. First, the only source of rights asserted by Bradley is the Minnesota Human Rights Act. See Pittari v. Am. Eagle Airlines, Inc., 468 F.3d 1056, 1060-61 (8th Cir. 2006) (concluding that the Railway Labor Act did not preempt Pittari's statutory claim because "[b]y asserting an ADA discrimination claim, Pittari seeks to enforce a federal statutory right, not a contractual right embodied in the collective bargaining agreement"). Bradley's Complaint does not assert any rights under the collective bargaining agreement. (Compl. at ¶¶ 15-22 [Doc. No. 1-1].) Second, the fact that

Bradley may have a potential remedy based on the collective bargaining agreement does not deprive him of independent remedies available under state law. Indeed, the Minnesota Human Rights Act authorizes an award of reasonable attorney's fees, damages for emotional distress, and punitive damages. See Wenigar v. Johnson, 712 N.W.2d 190, 211 (Minn. Ct. App. 2006). Such damages and attorney's fees are not explicitly available under the collective bargaining agreement. For instance, Section 20 (addressing grievances related to matters other than discipline) is altogether silent on remedies, and Section 19G (addressing investigation, discipline, and disciplinary grievances) identifies the remedies of lost wages and benefits, reinstatement, and clearing of charges for the exonerated pilot. (Second Decl. of Captain James M. White, Ex. 1 [Doc. No. 22-1].) Third, resolution of Bradley's claims will not require interpretation of the collective bargaining agreement. Interpreting a provision of a collective bargaining agreement entails resolving a dispute about the meaning of the provision, but "where the meaning of a provision in the CBA is not disputed, the application of that provision to a set of facts involves only reference to the provision." Sturge v. Nw. Airlines, Inc., 658 F.3d 832, 838 (8th Cir. 2011). Here, the parties do not dispute the meaning of provisions in the collective bargaining agreement as they relate to training or other components of Bradley's work. The Court's potential consultation of the provisions will be mere reference to—not interpretation of—the collective bargaining agreement. Therefore, the Railway Labor Act does not preempt Bradley's statutory claims.

## C. Waiver of Judicial Forum

Also at issue is whether Plaintiff waived his rights to a judicial forum for the instant claims by previously submitting his rights under the collective bargaining agreement to arbitration. For this inquiry, the Court considers: (1) whether the arbitration provision in Compass's collective bargaining agreement covers Bradley's statutory claims, and (2) whether the collective bargaining agreement clearly and unmistakably waives Bradley's right to a judicial forum.

### 1. The arbitration provision in Compass's collective bargaining agreement does not address Bradley's statutory claims

Whether the arbitration language in Section 21A covers Bradley's statutory claims determines the applicability of <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36 (1974), which held that the prior submission of a claim under the non-discrimination clause of a collective bargaining agreement does not foreclose an employee's statutory right to trial under Title VII. 415 U.S. at 59-60.

In <u>Gardner-Denver</u>, the plaintiff first filed a grievance under the collective bargaining agreement, claiming unjust discharge and requesting reinstatement. <u>Id.</u> at 39. Under this collective bargaining agreement, Article 5 § 2 provided that "there shall be no discrimination against any employee on account of race, color, religion, sex, national origin, or ancestry." (<u>Id.</u> at 42 n.2.) Article 23 § 6 stated, "[n]o employee will be discharged, suspended or given a written warning notice except for just cause." (<u>Id.</u> at n.3.) Article 23 § 5 contained a broad arbitration clause covering "differences aris[ing] between the Company and the Union as to the meaning and application of the provisions

13

of this Agreement" and "any trouble aris[ing] in the plant." (Id.) Article 23 § 5 further provided that the "arbitrator shall not amend, take away, add to, or change any of the provisions of this Agreement, and the arbitrator's decision must be based solely upon an interpretation of the provisions of this Agreement." (Id.) Before the arbitration hearing, the plaintiff filed a charge of racial discrimination with the Colorado Civil Rights Commission, which referred the complaint to the Equal Employment Opportunity Commission. (Id. at 42.) Without referring to the plaintiff's claim of racial discrimination, the arbitrator ruled that the plaintiff had been discharged for just cause. (Id.) The EEOC found no reasonable cause to believe that a violation of Title VII had occurred, and it notified the plaintiff of his right to sue in federal court. (Id. at 43.) The plaintiff then sued in federal court, alleging that his discharge resulted from racial discrimination in violation of Title VII. (Id.) The district court dismissed the action, finding that the plaintiff, having elected to pursue arbitration under the non-discrimination clause of the collective bargaining agreement, was precluded from suing under Title VII. (Id.) The Tenth Circuit Court of Appeals affirmed. (Id.)

In reversing the lower courts' decision, the Supreme Court found that mere resort to the arbitral forum to enforce contractual rights did not constitute waiver of statutory causes of action. (Id. at 52.) Moreover, where the arbitration agreement between the parties empowered the arbitrator to "resolve only questions of contractual rights" under a collective bargaining agreement, the arbitrator's decision could not preclude the employee from later bringing his Title VII claims in federal court, "regardless of whether

14

certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VII." (Id. at 53-54.)

Defendants argue that Gardner-Denver does not apply because their collective bargaining agreement expressly covers statutory claims. (Def.'s Supplemental Mem. in Supp. of Def.'s Mot. to Dismiss at 4 [Doc. No. 26].) Defendants note that the general arbitration provision in Section 21A covers "any dispute arising under the terms of this Agreement," and amongst the terms is the non-discrimination clause of Section 26DD. (Id. at 3-6.) Alternatively, Defendants argue that even if Plaintiff has not waived his right to a judicial forum, this Court should still dismiss the case because a potential Order reinstating Plaintiff would affect Compass's seniority list in violation of the collective bargaining agreement, and a judgment could have a highly prejudicial effect on ALPA, currently a non-party.[1] (Id. at 7-8.) In opposition, Plaintiff urges the applicability of Gardner-Denver, arguing that unions cannot waive his discrimination and reprisal claims, which Plaintiff asserts are personal and individual rights. (Pl.'s Supplemental Mem. in Opp'n to Def.'s Mot. to Dismiss at 2-5.)

The Court finds that the arbitration language of Compass's collective bargaining agreement excludes statutory claims. The arbitration and non-discrimination language of Defendants' collective bargaining agreement is similar to that of Gardner-Denver in

---

[1] The orders cited by Defendants in support of this argument—Botanic Oil Innovations, Inc. v. Rain Nutrition, LLC, No. 10-0645, 2010 WL 3614104 (D. Minn. Sept. 8, 2010) and AXA Equitable Life Ins. Co. v. Paulson, No. 06-341, 2007 WL 3124689 (D. Minn. Oct. 24, 2007)—arise from motions to dismiss for failure to join a required party under Federal Rule of Civil Procedure 19. Defendants have not properly brought a motion under Rule 19, and thus the Court declines to rule on this issue.

15

several ways. First, both collective bargaining agreements address arbitration and non-discrimination in separate provisions: Article 23 § 5 and Article 5 § 2, respectively, in Gardner-Denver—and Section 21A and Section 26DD, respectively, in the instant case. Second, the arbitration clauses in both collective bargaining agreements use broad language, such as "aris[ing] . . . as to the meaning and application of the provisions of this Agreement" in Gardner-Denver, and "arising under the terms of this Agreement" in Compass's agreement. Third, the non-discrimination provisions in Gardner-Denver's and Compass's collective bargaining agreements do not refer to specific statutes. In Gardner-Denver, Article 5 § 2 states that "there shall be no discrimination against any employee on account of race, color, religion, sex, national origin, or ancestry." Similarly, Section 26DD of Compass's collective bargaining agreement states, "[t]he Company and the Association agree that they will comply with applicable State and Federal laws which prohibit discrimination against any employee because of race, creed, color, religion, national origin, sex, age, disability or status as a military veteran." General reference to "State and Federal laws" is insufficient to incorporate specific statutes into this provision. See Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 79 (1998) (finding language in collective bargaining agreement that "the intention and purpose of all parties hereto that no provision or part of this Agreement shall be violative of any Federal or State Law" did not incorporate the Americans with Disability Act by reference so as to subject ADA claims to arbitration).

Indeed, the arbitration and non-discrimination language of Compass's collective bargaining agreement contrasts with that of cases in which courts found arbitration

16

clauses to cover both statutory and contractual discrimination claims.  See 14 Penn Plaza, 556 U.S. at 252.  As noted earlier, Section 30 of the collective bargaining agreement in 14 Penn Plaza states in part:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any other characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, . . . or any other similar laws, rules, or regulations.  All such claims shall be subject to the grievance and arbitration procedures (Articles V and VI) as the sole and exclusive remedy for violations.

(Id.)  The language of Section 30 is considerably tighter and more detailed than the general arbitration and non-discrimination provisions in Gardner-Denver and the instant case.  Unlike Section 21A and Section 26DD of Compass's agreement and Article 23 § 5 and Article 5 § 2 of Gardner-Denver's collective bargaining agreement, Section 30 in 14 Penn Plaza yokes the arbitration and non-discrimination language together in one paragraph.  Section 30 also identifies statutes specifically, unlike the sweeping language in Gardner-Denver's and Compass's non-discrimination provisions.  Because the arbitration and non-discrimination language of Compass's collective bargaining agreement is more similar to that of Gardner-Denver than of 14 Penn Plaza, this Court finds that Compass's arbitration provision does not cover statutory claims.

Where Compass's arbitration provision does not cover statutory claims, Gardner-Denver's core holding applies: the decision to arbitrate an employee's contractual claim by itself does not waive his subsequent litigation of statutory claims arising out of the same underlying facts.  (See id. at 262-63.)  Here, ALPA and Bradley submitted purely

17

contractual claims in his March 2, 2011 grievance to Compass, "[p]ursuant to the Agreement between Compass Airlines, LLC, and the air line pilots in its service . . . in accordance with the provisions established in Section 19 and related Sections of the Agreement." (Decl. of Todd Naugle, Ex. 1 at 2 [Doc. No. 16-1].) In this grievance, Bradley alleged that Compass

> . . . violated Section 19 A.2, in that it lacks just cause to discharge the grievant. In addition, the Company violated Sections 19 A. and 19 B. and related Sections of the Agreement by failing to conduct an investigatory hearing and failing to deliver written notification of the discharge to the grievant in accordance with Section 19 A.3.d.

(Id.) Notably, Bradley did not refer to the collective bargaining agreement in his Complaint. The Complaint instead invokes Bradley's statutory rights under the Minnesota Human Rights Act for race discrimination (Minn. Stat. § 363A.08, subd. 2 and 3) and for reprisal (Minn. Stat. § 363A.15). (Compl. ¶¶ 15-22 [Doc. No. 1-1].) Accordingly, under Gardner-Denver, the Court finds that Bradley did not waive his statutory right to a judicial forum by previously submitting his contractual claims to arbitration.

### 2. The collective bargaining agreement does not clearly and unmistakably waive Bradley's right to a judicial forum

The Court also considers whether Compass's collective bargaining agreement clearly and unmistakably waives Bradley's right to a judicial forum. Courts "will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is explicitly stated." Wright, 525 U.S. at 80. The waiver must be "clear and unmistakable." (Id.) (finding no clear and unmistakable

waiver where the "very general" arbitration clause provided arbitration for "[m]atters in dispute," and the rest of the collective bargaining agreement did not explicitly incorporate statutory non-discrimination requirements).

In comparing Section 21A and Section 26DD of Defendants' collective bargaining agreement with language supporting clear and unmistakable waiver in other cases, the Court finds that the "clear and unmistakable" standard is not met here. See 14 Penn Plaza, 556 U.S. at 252; Thompson v. Air Transp. Int'l Ltd. Liab. Co., 664 F.3d 723, 726 (8th Cir. 2011). In Thompson, the court found the following arbitration provision to waive a judicial forum:

> [C]laims of discrimination arising within the employment relationship between the Company and the Crewmembers, whether such claims are made under the collective bargaining agreement or in state or federal court and alleged to be violations of state or federal law . . . are to be addressed, resolved and finalized solely under Section V—Grievance and/or [Section] VI—Arbitration of the Agreement as by the terms of the Collective Bargaining [Agreement] each Crewmember waives each and every cause of action and remedies provided under these statutes and common law frameworks.

664 F.3d at 726. This provision in Thompson and Section 30 in 14 Penn Plaza share language clarifying that grievance and arbitration procedures are the only (e.g., "solely," "sole," "exclusive") remedy for statutory violations. Both address non-discrimination and the arbitral forum in the same paragraph. And the provision in Thompson explicitly provides for waiver of the judicial forum.

In such context, this Court finds that Defendants' collective bargaining agreement does not clearly and unmistakably waive Bradley's right to a judicial forum. Unlike the provisions in 14 Penn Plaza and Thompson, Section 21A in

19

Defendants' collective bargaining agreement does not indicate that the System Board is the only remedy for disputes or grievances arising under the terms of the collective bargaining agreement.  Nor does the agreement juxtapose non-discrimination language with that of grievance and arbitration procedures in the same provision.  Finally, Section 21A does not explicitly identify any waiver of a judicial forum.  Section 21A's general language of establishing a System Board to adjust and decide disputes "arising under the terms of this Agreement" is more akin to the arbitration language in <u>Wright</u> than in <u>Thompson</u> and <u>14 Penn Plaza</u>.  Accordingly, the Court does not find a clear and unmistakable waiver of Bradley's right to a judicial forum in Defendants' collective bargaining agreement.

For all of these reasons, the Court denies Defendants' Motion to Dismiss.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss [Doc. No. 12] is **DENIED.**

Dated: June 5, 2013

s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge